UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER McDANIEL,

      Plaintiff,                       Case No. 4:21-cv-12307
                                        District Judge Shalina D. Kumar
v.                               Magistrate Judge Kimberly G. Altman

MS. WOODS,

      Defendant.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY
IN PART DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT (ECF NO. 17)**

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff

Christopher McDaniel (McDaniel), currently incarcerated at the Macomb

Correctional Facility in Lenox Township, Michigan, filed a *pro se* complaint on

September 22, 2021, alleging First and Fourteenth Amendment violations against

Defendant Lynn Wood (Wood)[1], a principal with the Michigan Department of

Corrections (MDOC) for actions arising at the Cooper Street Correctional Facility

(JCS) in Jackson, Michigan.  (ECF No. 1).  Under 28 U.S.C. § 636(b)(1), all

_____

[1] The undersigned uses the spelling for Defendant's name found in her motion
papers.

pretrial matters were referred to the undersigned.  (ECF No. 9).

Before the Court is Wood's motion to dismiss, or alternatively, for summary

judgment on the basis of exhaustion of administrative remedies.  (ECF No. 17).

The motion is fully briefed.  (ECF Nos. 19 (response), 20 (reply), 21 (surreply)).

For the reasons that follow, the undersigned RECOMMENDS that Wood's motion

to dismiss McDaniel's Fourteenth Amendment claim be GRANTED and that

McDaniel's Fourteenth Amendment claims be DISMISSED WITHOUT

PREJUDICE; and that Wood's motion for summary judgment on McDaniel's First

Amendment retaliation claim on the basis of exhaustion be DENIED.

## II.    Factual Background

McDaniel alleges that on March 29, 2021, he was written a misconduct

ticket for allowing another inmate to use his laptop, which he used to attend

education courses within JCS, against MDOC policy regarding school laptops.

(ECF No. 1, PageID.10).  That day, he spoke to Wood, and she provided him with

documents to sign, which upon inspection appeared to be forms for him to drop his

classes.  (*Id*.).  Wood stated that because of his misconduct ticket, he would be

required to sign the forms and drop his classes.  (*Id*.).  McDaniel told her that he

did not violate any rules and that he was entitled to a hearing on the misconduct

ticket before being dropped from classes for the misconduct.  (*Id*.).

Some number of days after that, McDaniel challenged his misconduct ticket

at a hearing, at which the misconduct was dropped because McDaniel did not

consent to the other inmate's use of his laptop. (*Id*.). However, McDaniel

discovered days later that he had been dropped from his courses. (*Id*.). This

resulted in him receiving a failing grade in all courses and owing $1,587.00 for

dropping the courses. (*Id*., PageID.11).

McDaniel claims that Wood had him dropped from his courses in retaliation

for refusing to sign the documents and challenging the misconduct against him,

and that he was denied equal protection of the law because other students who

were found not guilty of misconduct after receiving a ticket were able to return to

class. (*Id*., PageID.6-7). Wood now moves for dismissal of the equal protection

claim, arguing that McDaniel did not plead every element of such a claim, and for

summary judgment on the retaliation claim on the basis that McDaniel did not

exhaust his administrative remedies for that claim.

### III.   Legal Standards

### A.   Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), the Court must "construe the complaint in the light most favorable to

plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605,

608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(concluding that a plausible claim need not contain "detailed factual allegations,"

but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action ..."). Facial plausibility is established "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted). "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.*

*Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). Furthermore, the Court

holds *pro se* complaints to "less stringent standards than formal pleadings drafted

by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B.      Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material if it might affect the outcome of the case under governing

law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views

the evidence, all facts, and any inferences that may be drawn from the facts in the

light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists...." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that McDaniel is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, ... 'the liberal pleading standards under [*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-513 (2002)] and [the Federal Rules] are inapplicable.' " *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

IV.   Discussion

A.   Dismissal of McDaniel's Equal Protection Claim

Wood argues that McDaniel's equal protection claim under the Fourteenth Amendment has not been adequately pled, and that by failing to address this in his response to her motion, McDaniel has waived any defense to this argument.

1.   Legal Standard

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.' " *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006), *overruled on other grounds by Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), *as recognized in Davis v. Prison Health Servs.*, 679 F.3d 433, 442 n. 3 (6th Cir. 2012)).

2.   Application

McDaniel has devoted a single sentence of the complaint to addressing the elements of an equal protection claim, stating that "[a]ll the students whom when found not guilty returned to class, except me." (ECF No. 1, PageID.7).  In arguing against dismissal, McDaniel cites cases pre-dating the Supreme Court's decision in

6

*Iqbal*.  With *Iqbal*, "the Court has ushered in the era of so-called 'plausibility

pleading,' which represents a more exacting standard[.]"  Victor E. Schwartz &

Christopher E. Appel, *Rational Pleading in the Modern World of Civil Litigation:*

*The Lessons and Public Policy Benefits of Twombly and Iqbal*, 33 Harv. J.L. &

Pub. Pol'y 1107, 1108–09 (2010).  This threadbare recital of a single requirement

of an equal protection claim does not suffice to state a cause of action under *Iqbal*

and McDaniel's citations to seemingly more lenient pleading requirements from

prior Supreme Court cases are unavailing.

      McDaniel is correct that his claim is not subject to a specifically heightened

pleading standard.  But even under the general rules of pleading, his singular

statement regarding other students does not constitute "a short and plain statement

of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P.

8(a)(2).  McDaniel has also failed to plead that his disparate treatment "burdens a

fundamental right" or "targets a suspect class[.]"  *Napolitano*, 648 F.3d at 379.  He

is therefore left with a claim that his treatment had no rational basis, *id*., but his

claim falls short of meeting this standard as well.  McDaniel has not alleged that

there was no rational basis for him to be dropped from his classes, only that it went

against MDOC regulations and was disparate from the treatment of other prisoners.

Thus, his complaint fails to state a claim for violation of equal protection.

      However, this claim should be dismissed without prejudice.  If McDaniel

becomes aware of facts during discovery that show, for instance that he was treated

disparately due to his membership in a protected class, he may move for leave to

amend the complaint and reinstate an equal protection claim in more detail.

### B.   Exhaustion of McDaniel's First Amendment Claim

#### 1.   Legal Standard

The PLRA requires prisoners to "properly" exhaust all "available"

administrative remedies prior to filing a lawsuit challenging prison conditions.  42

U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper

exhaustion of administrative remedies "means using all steps that the agency holds

out, and doing so *properly* (so that the agency addresses the issues on the merits)."

*Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and

citations omitted).  Requiring exhaustion allows prison officials an opportunity to

resolve disputes concerning the exercise of their responsibilities before being haled

into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S.

199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails

because "it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which

the defendant has the burden to plead and prove by a preponderance of the

evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner

countering a motion alleging failure to exhaust "must offer competent and specific

evidence showing that he indeed exhausted his remedies, or was otherwise excused

from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D.

Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969

(E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to

exhaust administrative remedies is not on the merits and thus requires dismissal

without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve

prisoner grievances.  "Under the [Michigan] Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance."  *Reed-Bey v.

Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Sixth Circuit in

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors."  *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory."  *Burton v.

Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles

by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underscoring omitted).

Furthermore, MDOC PD also 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution.  (*Id*. at ¶¶ Q, W.)  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  (*Id*. at ¶¶ U, DD.)  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure.  (*Id*. at ¶¶ U, HH.)  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022).  "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D.

10

Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II).  "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2.   Application

Wood argues that even though she was personally named in the Step I grievance that McDaniel filed and fully exhausted through Step III, he did not properly exhaust his claims because the grievance failed to assert retaliation or a violation of his right to equal protection of the law.  In support of this argument, Wood cites *Ward v. Luckey*, No. 12-cv-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 10, 2013) and *Jordan-El v. Harrington*, No. 2:06-cv-10431, 2006 WL 1791261, at *3 (E.D. Mich. June 26, 2006).  However, Wood overstates the applicability of these cases.

In *Ward*, "the plaintiff exhausted a grievance alleging the defendant had interfered with his yard time, but sought redress in the complaint for a later incident in which the defendant allegedly retaliated against him for filing that grievance.  As the court noted, the grievance plaintiff exhausted could not preemptively exhaust later events." *Alexander v. Nietzel*, No. 2:16-CV-12071, 2018 WL 3685455, at *4 (E.D. Mich. July 10, 2018), *report and recommendation adopted*, 2018 WL 3659525 (E.D. Mich. Aug. 2, 2018).  The *Alexander* court distinguished *Ward* where, as here, a plaintiff's claims "flow from the same facts

11

complained of in the grievance at issue." *Id*.

> To find otherwise would, on the one hand, reward conspiratorial misconduct in which the tortfeasor cloaks his intent to confound the victim and hamper her recovery. And on the other hand, prisoners should not feel compelled to include baseless or frivolous allegations in grievances simply for fear that the rigidity of a court's exhaustion standards may prevent the due consideration of evidence not yet available.

*Id*.

More on-point is *Jordan-El v. Harrington*, in which the court reasoned that, "[s]ince retaliation is a separate form of misconduct or mistreatment, the Plaintiff was required to give prison officials fair notice of a First Amendment retaliation claim." 2006 WL 1791261, at *3. This case, too, is distinguishable, because "in *Jordan*, the plaintiff did not set forth any facts or claims in his grievances that his mistreatment was related to his having filed a previous lawsuit or grievance against the defendant Corrections Officer." *Reed-Bey v. Lewis*, No. 13-10168, 2016 WL 5109542, at *4 (E.D. Mich. Aug. 22, 2016), *report and recommendation adopted*, 2016 WL 5071197 (E.D. Mich. Sept. 20, 2016). Here, McDaniel's Step I grievance was summarized by the MDOC as follows:

> McDaniel states that his laptop was taken without his consent. He was written a misconduct, but it was dismissed. He was removed from Jackson College and wants to be reinstated with grades adjusted for being removed so he does not have to repeat the classes.

(ECF No. 17-3, PageID.122).

*Reed-Bey v. Lewis* is instructive. There, the plaintiff's property was

confiscated by a corrections officer subject to a property hearing.  2016 WL

5109542, at *1.  The property hearing was held by the same officer that

confiscated the property.  *Id*.  The plaintiff complained about this fact, and the

hearing was postponed; the plaintiff then brought this complaint to the warden.  *Id*.

Upon reconvening the hearing, that same officer found that the plaintiff's property

should not be returned.  *Id*.  A subsequent property hearing was later held by a

different officer, but the result was the same.  *Id*. at *2.

The plaintiff in *Reed-Bey* then sued, claiming "a due process violation based

on the non-return of his property," and "that his property was disposed of in

retaliation for his complaining about the unfairness of the property hearing."  *Id*.

The defendant argued that the plaintiff's grievance did not mention the word

"retaliation" and therefore did not exhaust his retaliation claim, but the court found

that this argument overstated the requirements of the MDOC grievance procedure.

*Id*. at *3.

" 'The MDOC policy does not contain a precise description of the necessary

degree of factual particularity required of prisoners.'  Rather, 'a grievant need only

object intelligibly to some asserted shortcoming and need not lay out facts,

articulate legal theories, or demand particular relief.' "  *Id*. (quoting *Davison v.*

*MacLean*, No. 06-12755, 2007 WL 1520892, *5 (E.D. Mich. 2007) (internal

quotations omitted)).  Here, as in *Reed-Bey*, McDaniel included the facts in his

13

grievance necessary to encompass a claim of retaliation, even though the

retaliation claim is not spelled out in the grievance.  To require more and "suggest

that he should have intuited a stranger's motives at the very moment of his

mischief is to demand from an ordinary man the skill of supernatural foresight."

*Alexander*, 2018 WL 3685455, at *3 (citing *Reed-Bey*, 2016 WL 5109542, at *3).

Thus, under Woods' "notice pleading" theory of exhaustion, McDaniel has

exhausted his retaliation claim.

Furthermore, Wood's heightened theory of exhaustion has been called into

doubt by the Supreme Court.  In *Jones v. Bock*, 549 U.S. 199, 219 (2007), the

Court stated that, while the "Sixth Circuit rule may promote early notice to those

who might later be sued," the " 'primary purpose of a grievance is to alert prison

officials to a problem, not to provide personal notice to a particular official that he

may be sued[.]' " (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004));

*see also Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *6-7 (E.D.

Mich. July 31, 2018), *report and recommendation adopted*, 2018 WL 4501480

(E.D. Mich. Sept. 20, 2018) ("Since the Supreme Court decided *Jones v. Bock*, the

Sixth Circuit has stated that courts ought not impose severe technical requirements

on prisoners who comply with the spirit and purpose of the administrative

exhaustion rules."); *Moffat v. Mich. Dep't of Corr.*, No. 09-14696, 2010 WL

3905354, at *2 (E.D. Mich. Sept. 27, 2010) ("[T]he primary purpose of the

exhaustion requirement is not notice—it is not intended to substitute either the summons or the complaint."); *Diaz v. Rutter*, No. 2:05-CV-239, 2006 WL 3370875, at \*4 (W.D. Mich. Nov. 20, 2006) ("[T]here is no requirement that a prisoner must exhaust specific legal theories.  It is enough that Plaintiff presents factual allegations that could support a legal theory against the Defendants in a Step I grievance.").

Overall, McDaniel's grievance sufficiently alerted prison officials to his retaliation claim against Wood so as to satisfy the exhaustion requirement.  Thus, McDaniel should be allowed to proceed on this claim.[2]

## V.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Wood's motion to dismiss McDaniel's Fourteenth Amendment claim be GRANTED and that McDaniel's Fourteenth Amendment claims be DISMISSED WITHOUT PREJUDICE.  She further RECOMMENDS that Wood's motion for summary judgment on McDaniel's First Amendment retaliation claim on the basis of exhaustion be DENIED.

If the District Court adopts this Report and Recommendation, a scheduling

---

[2] Wood also contends that this grievance did not exhaust McDaniel's equal protection claim.  This presents a closer question, as his grievance did not allege that he was treated disparately from other prisoners.  However, in light of the recommendation, *supra*, that the equal protection claim be dismissed for failure to state a cause of action, the undersigned need not address this issue.

order will be entered, and McDaniel's case will be able to proceed as to the

retaliation claim alone.

Dated: December 9, 2022                          s/Kimberly G. Altman
Detroit, Michigan                                KIMBERLY G. ALTMAN
                                                 United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the court determines that any objections are without

merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on December 9, 2022.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager
